OPINION OF THE COURT
Sue Ann Hoahng, J.
*847 In this summary holdover proceeding, the petitioner landlord, Security Pacific National Trust Company (hereinafter Security Pacific), seeks possession of the premises at 442 Jamaica Avenue, second floor rear unit, Brooklyn, New York. Further, Security Pacific sues respondent tenants Teodora Cuevas, Ingrid Cuevas, also known as Ingrid Cubas, Jeovanny Soto, Frank Soto, Mary Soto, Deryck Seeram, Nandrannie Seeram, Jeanette Gopee, Sookdee Gopee, and Pantranee Bansi (hereinafter respondents) for the use and occupancy at a rate of $1,863.01 per month for the period February 1998 to April 1998, plus a balance of $240.40 from January 1998.
The case was scheduled to be heard on April 6, 1998. The landlord appeared represented by counsel and the tenants appeared pro se. The court apprised the landlord’s attorney that the petition was defective on its face and that the petition would be dismissed due to the defects. The court then informed the respondents of the defects and, in an effort to settle the proceeding, asked if they would waive the jurisdictional defects. The respondents declined and the court informed Security Pacific that the petition would be dismissed due to the defects.
In a summary holdover proceeding, the petitioner must allege in the petition the regulatory status of the premises. (See, RPAPL 741 [3] [the petition must “(d)escribe the premises from which removal is sought”], [4] [the petition must “(s)tate the facts upon which the special proceeding is based”].) Further, it is this court’s responsibility to examine the pleadings of every proceeding that is to be adjudicated to ensure that the pleadings are in “strict compliance with the statutory requirements” of the applicable law to confer jurisdiction upon the court. (See, MSG Pomp Corp. v Doe, 185 AD2d 798, 800 [1992].) Therefore, “the court is required to make a summary determination ‘upon the pleadings, papers and admissions’ (CPLR 409 [b]).” (Matter of Brusco v Braun, 199 AD2d 27, 32 [1993] [emphasis added].)
This proceeding was commenced upon two separate grounds: RPAPL 713 (5) and (7). We dispose of the second ground, summarily, by noting that RPAPL 713 (7) authorizes a holdover to be commenced against licensees who are no longer entitled to possession, “provided, however, that a mortgagee * * * in possession shall not be deemed to be a licensee within the meaning of this subdivision.” (RPAPL 713 [7].) Petitioner alleges it purchased the subject property pursuant to foreclosure sale and now seeks to evict the mortgagee respondents. As petitioner’s pleadings allege the respondents are mortgagees in posses *848 sion, the cause of action based upon RPAPL 713 (7) cannot stand.
A review of the pleadings in light of petitioner’s remaining argument, predicated upon RPAPL 713 (5), indicates that the notice to quit served upon respondents failed to include a copy of the deed, properly certified in accordance with CPLR 2105, as required by RPAPL 713 (5). A proper termination notice in this case is necessary to the subject matter jurisdiction of the court and is incurable retroactively. (New York InfirmaryBeekman Downtown Hosp. v Sarris, 20 HCR 505A, NYLJ, Aug. 19, 1992, at 23, col 4 [Civ Ct, NY County].)
Petitioner, Security Pacific National Trust Company, alleges it purchased the subject property, 442 Jamaica Avenue, second floor rear unit, Brooklyn, New York, pursuant to foreclosure sale on January 28, 1998. Subsequently, petitioner served a 10-day notice to quit upon respondents. Annexed to the 10-day notice to quit was a copy of the Referee’s deed. This deed was three pages in length and purported to be a certified deed. The certification appeared in the middle of the second page of the document, not on the last page, and the attorney’s signature certifying it was a copy of a signature, not an original.
The first issue presented is whether a copy of an authenticating signature comports with the requirements of CPLR 2105. RPAPL 713 (5) provides a holdover action may be maintained where “[t]he property has been sold in foreclosure and either the deed delivered pursuant to such sale, or a copy of such deed, certified as provided in the civil practice law and rules, has been exhibited to [the respondents].” (Emphasis added.)
The CPLR section concerned with an attorney’s certification, CPLR 2105, states: “Where a certified copy of a paper is required by law, an attorney admitted to practice in the courts of the state may certify that it has been compared by him with the original and found to be a true and complete copy. Such a certificate, when subscribed by such attorney, has the same effect as if made by a clerk.”
The deed in question certainly bears a certification. The issue, however, is whether the Legislature intended to allow a facsimile of a signature to stand in for the original. This court first addresses this issue by noting that the statute is silent on whether a facsimile of a signature may take the place of an original. Second, there is a dearth of case law on the subject of CPLR 2105 in general, and no cases discussing this issue in particular.
Lacking aid from the face of the statute or case law, we look to interpret the statute by looking at its terms, its history, and *849 by comparison with other similar statutes. CPLR 2105 allows a certified document to be admitted when that document has been “subscribed by such attorney”. The term “subscribe”, though not defined definitively in regards to the CPLR, has been discussed in numerous cases involving wills (Matter of Marques, 123 NYS2d 877; Matter of Winters, 277 App Div 24, affd 302 NY 666) and criminal prosecutions (People v Coldiron, 77 Misc 2d 102 [1974]). In Coldiron, the court states “ ‘the word “subscribed”, in its habitual use, and according to both its popular and literary signification, is limited to a signature at the end of a printed or written instrument.’ ” (Supra, at 105, citing James v Patten, 6 NY 9, 13.)
Towards identifying a rationale for the legislative requirement that certain documents be subscribed, the Coldiron court stated: “ ‘Presumably the underlying purpose of the legislature in requiring that a memorandum be “subscribed” is the same as that in the case of wills * * * namely to prevent fraud through insertion or additions to a writing subsequent to its execution.’ ” (People v Coldiron, 77 Misc 2d, at 104, supra, citing 56 NY Jur, Statute of Frauds, § 220.)
Looking to other statutes which also require a document to be subscribed, the Coldiron court noted that, with regard to CPLR 2106 (at 105), “the courts have taken a firm position that the formal requirements be complied with by disallowing the use of a rubber stamp for a signature (Sandymark Realty Corp. v. Creswell, 67 Misc 2d 630); and in not allowing ‘the mere typing’ of the attorney’s name to suffice the dictates of the statute (Maori v. St. Agnes Cemetery, 44 Misc 2d 702).”
This court notes CPLR 4540, concerning authentication of official records, which specifically allows an official of the State to certify an official document by signing it or “with a facsimile of the signature of, the clerk” (CPLR 4540 [b]). However, this section allows a facsimile of the signature to stand in place of an original only where the document also has the additional and substantial safeguard of having the official seal attached to that document. (CPLR 4540 [b].) Juxtaposing this statute, within which the Legislature purposefully allowed the use of a photocopied signature where an official seal is attached, against CPLR 2105, which is silent regarding photocopied signatures, is revealing. Where the Legislature “ ‘ “includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the Legislature] acts intentionally and purposely in the disparate inclusion or exclusion.” ’ ” (INS v Cardoza-Fonseca, 480 US *850 421, 432 [1987], citing Russello v United States, 464 US 16, 23 [1983], quoting United States v Wong Kim Bo, 472 F2d 720, 722 [5th Cir].)
In light of the above discussion, this court finds that the Legislature did not intend to allow a mere facsimile of an attorney’s signature to suffice where a certified copy is required by the Civil Practice Law and Rules. RPAPL 713 (5) requires a deed certified in accordance with the CPLR to be published to the respondents. The 10-day notice to quit failed to contain a deed properly certified, therefore, the 10-day notice to quit was faulty. A proper termination notice in this case is necessary to the subject matter jurisdiction of the court and is incurable retroactively. (New York Infirmary-Beekman Downtown Hosp. v Sarris, 20 HCR 505A, NYLJ, Aug. 19, 1992, at 23, col 4 [Civ Ct, NY County], supra.) The court finds that the petition must be dismissed without prejudice.
While this matter is being dismissed for the above reasons, there are a number of issues which we now address in anticipation of this matter being brought back to court at a later point in time. The first issue involves the placement of the certification itself. The certification was placed in the middle of the second page of a three-page deed. It is well founded that a certification or a signature is only binding as to the information that comes before it. It is not binding as to any writing that may follow. Since the certification here is in the middle of the deed, the accuracy of the information after it becomes questionable.
This court notes also that the affidavit of the service for both the notice to quit and the petition and notice of petition prompted concern. Addressing this matter sua sponte and sans traverse hearing, we note for the record that there are 12 respondents named in this action, including John Doe and Jane Doe. We further note that the process server’s affidavit of service of the 10-day notice to quit states he served one respondent personally, one by serving a person of suitable age and discretion, and 10 by conspicuous service. The manner in which he served 11 of the respondents required him to inquire as to whether the respondent was in active military service of the United States in any capacity. Each affidavit of service states that service was effectuated at 4:50 p.m. and that inquiries with regard to military service were effectuated by 4:52 p.m., March 5, 1998.
This court notes that, while no traverse hearing was held, it would be inclined to take judicial notice that 12 people cannot *851 be properly served, including nonmilitary status inquiries, in compliance with RPAPL 735 in a span of two minutes. This court suggests that, if this action is commenced again, the process server should note more carefully what time his or her watch states, and make sure that the applicable statutes and case law are being complied with.
A second issue concerning service involves not the time but the manner in which the respondents were served. According to the affidavits of service, one respondent was personally served, one was served by substitute service, and 10 were served by conspicuous place service. While on its face, this may not be improper, this court is prompted to question why 10 of the respondents, those served by “nail and mail”, were not served via substitute service as was the second respondent, especially when service was effectuated upon all the respondents at the same precise moment in time? Why did the process server not leave all the notices with the person at the door instead of just leaving two notices with her, and “nailing and mailing” the other 10? Moreover, after the process server served the first respondent personally, and served the papers for the second respondent to the first respondent, what did the process server do with the remaining 10 copies? Did he wait for the door to close and then slide them under the door? As unlikely as this may sound, the court can think of no other explanation that might be reasonable in light of 12 respondents being served by 3 different methods at, according to the sworn affidavits, exactly the same time.
There are some issues we do not resolve now, and some questions we may never know the answers to. However, the instant petition is dismissed without prejudice based upon the failure of the deed published to the respondents to be certified in accordance with the Civil Practice Law and Rules as required by RPAPL 713 (5).